APPEAL NO. 2016-1013

# United States Court Of Appeals For The Federal Circuit

**COX COMMUNICATIONS, INC.; COXCOM, LLC; COX ARKANSAS TELCOM LLC; COX COMMUNICATIONS ARIZONA LLC; COX ARIZONA TELCOM LLC; COX CALIFORNIA TELCOM LLC; COX COMMUNICATIONS CALIFORNIA LLC; COX COLORADO TELCOM LLC; COX CONNECTICUT TELCOM LLC; COX DISTRICT OF COLUMBIA TELCOM LLC; COX FLORIDA TELCOM LP; COX COMMUNICATIONS GEORGIA LLC; COX GEORGIA TELCOM LLC; COX IOWA TELCOM LLC; COX IDAHO TELCOM LLC; COX COMMUNICATIONS KANSAS LLC; COX KANSAS TELCOM LLC; COX COMMUNICATIONS GULF COAST LLC; COX COMMUNICATIONS LOUISIANA LLC; COX LOUISIANA TELCOM LLC; COX MARYLAND TELCOM LLC; COX MISSOURI TELCOM LLC; COX NEBRASKA TELCOM LLC; COX COMMUNICATIONS OMAHA LLC; COX COMMUNICATIONS LAS VEGAS INC.; COX NEVADA TELCOM LLC; COX NORTH CAROLINA TELCOM LLC; COX OHIO TELCOM LLC; COX OKLAHOMA TELCOM LLC; COX RHODE ISLAND TELCOM LLC; COX COMMUNICATIONS HAMPTON ROADS, LLC; COX VIRGINIA TELCOM LLC,**

*Plaintiffs – Appellees,*

v.

**SPRINT COMMUNICATION COMPANY LP; SPRINT SPECTRUM, L.P.; SPRINT SOLUTIONS, INC.,**

*Defendants – Appellants,*

**CISCO SYSTEMS, INC.,**

*Defendant.*

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE IN
CASE NO. 1:12-CV-00487-SLR, JUDGE SUE L. ROBINSON.

## CORRECTED REPLY BRIEF OF DEFENDANTS-APPELLANTS

B. Trent Webb
Peter E. Strand
John D. Garretson
Ryan D. Dykal
Aaron E. Hankel
SHOOK, HARDY
  & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

Robert H. Reckers
SHOOK, HARDY
  & BACON L.L.P.
600 Travis St., Suite 3400
Houston, TX 77002
(713) 227-8008

J. Michael Jakes
FINNEGAN, HENDERSON,
  FARABOW, GARRETT
  & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 2000
(202) 408-4000

*Counsel for Defendants-Appellants*
*Sprint Communications Co., L.P., Sprint Spectrum, L.P., Sprint Solutions, Inc.,*

FORM 9. Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Cox Commc'ns., et al.　　**v.**　　Sprint Commc'ns Company LP, et al.

Case No.　　16-1013

### AMENDED CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

appellant　　certifies the following (use "None" if applicable; use extra sheets if necessary):

1.　　The full name of every party or amicus represented by me is:

Sprint Communications Company L.P., Sprint Spectrum, L.P., and Sprint Solutions, Inc.

2.　　The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me is:

None

3.　　All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curiae represented by me are listed below. (Please list each party or amicus curiae represented with the parent or publicly held company that owns 10 percent or more so they are distinguished separately.)

Sprint Communication, Inc. is a wholly-owned subsidiary of Sprint Corporation, which is a public company listed on the New York Stock Exchange. SoftBank Corp., a public company listed on the Tokyo Stock Exchange First Section, owns 10% or more of the stock of Sprint Corporation.
Sprint Communications Company, L.P.; Sprint Spectrum, L.P.; and Sprint Solutions, Inc., are all wholly owned by Sprint Communication, Inc., either directly or indirectly.

4.　[X]　The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Shook, Hardy & Bacon L.L.P.: B. Trent Webb, Peter Strand, John D. Garretson, Robert H. Reckers, Aaron Hankel, David Morehan Andrew Cooper, Bart Starr, Jared Tong, Jordan Bergsten, Lynn Herndon, Ryan Dykal and Ryan Schletzbaum; Morris James LLP: Richard Hermann and Mary Matterer; and Finnegan, Henderson, Farabow, Garrett & Dunner, LLP: J. Michael Jakes

March 11, 2016
**Date**

/s/ B. Trent Webb
**Signature of counsel**

**Please Note: All questions must be answered**

B. Trent Webb
**Printed name of counsel**

cc:　All counsel of record (via ECF system)

FORM 30. Certificate of Service

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on ___March 11, 2016___
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| B. Trent Webb | /s/ B. Trent Webb |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Shook, Hardy & Bacon, LLP |
| Address | 2555 Grand Blvd. |
| City, State, Zip | Kansas City, Missouri 64108 |
| Telephone Number | 816-474-6550 |
| Fax Number | 816-421-5547 |
| E-Mail Address | bwebb@shb.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... iii

SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ............................................................................................ 3

I.  THE DISTRICT COURT DISREGARDED ALL "FUNCTIONAL"
    EVIDENCE IN CONSIDERING THE SCOPE OF "PROCESSING
    SYSTEM," WHICH IS ERROR .................................................... 3

    A.  The District Court Erred by Disregarding Functional
        Limitations, Which Sufficiently Bound the Scope of
        "Processing System" ................................................................ 3

    B.  This Court Has Repeatedly Rejected the District Court's
        Approach of Drawing an Uncrossable Line Between
        Structure and Function .............................................................. 5

    C.  The Intrinsic and Extrinsic Evidence, Properly Weighed
        to Include Limitations in Scope Imposed by the
        Functions Performed, Clearly Establish Definiteness .............. 11

    D.  Cox Urged the District Court to Erroneously Disregard
        Any Boundaries Imposed on the Scope of "Processing
        System" ..................................................................................... 16

    E.  The District of Kansas Correctly Applied the Law, and
        Found Sprint's Claims to Be Definite ...................................... 17

II. BECAUSE THE DISTRICT COURT'S NOVEL APPROACH IS LEGALLY
    UNTENABLE, COX NOW RETREATS TO INAPPLICABLE LEGAL
    DOCTRINES ..................................................................................... 19

    A.  The District Court's Order Does Not Find Support in the
        "Limit on Functional Claiming" Now Advanced by Cox
        on Appeal .................................................................................. 19

B.    The Sole Case Relied on by the District Court for Its Approach Is *Microprocessor Enhancement*, Which Fails to Support the Present Indefiniteness Judgment ....................... 21

C.    The District Court's Order Does not Find Support in § 112(f) "Means-Plus-Function" Claiming ................................... 24

III.    THE DISTRICT COURT'S ANALYSIS CANNOT BE AFFIRMED ON ALTERNATIVE 112(F) GROUNDS, WHICH WOULD REQUIRE THRESHOLD FACTUAL DETERMINATIONS NOT IN THE RECORD ........... 26

CONCLUSION ..................................................................................... 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page**

## Cases

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
808 F.3d 1313 (Fed. Cir. 2015) ....................................................................14

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
783 F.3d 1374 (Fed. Cir. 2015) ("*Nautilus III*") ....................................*passim*

*Deckers Corp. v. United States*,
752 F.3d 949 (Fed. Cir. 2014) .....................................................................29

*EnOcean GmbH v. Face Int'l Corp.*,
742 F.3d 955 (Fed. Cir. 2014) .....................................................................27

*Envirco Corp. v. Clestra Cleanroom, Inc.*,
209 F.3d 1360 (Fed. Cir. 2000) ...................................................................24

*Gen. Elec. Co. v. Wabash Appliance Corp.*,
304 U.S. 364 (1938)...............................................................................20, 21

*Generation II Orthotics Inc. v. Med. Tech. Inc.*,
263 F.3d 1356 (Fed. Cir. 2001) ...................................................................28

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
620 F.3d 1287 (Fed. Cir. 2010) ...................................................................26

*Halliburton Energy Servs., Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008) ....................................................7, 8, 20, 21

*Hill-Rom Services, Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) .........................................................9, 10, 20

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*,
401 F.3d 1367 (Fed. Cir. 2005) ..............................................................4, 16

*In re Katz Interactive Call Processing Patent Litig.*,
639 F.3d 1303 (Fed. Cir. 1994) .............................................................21, 22

*Intl. Med. Prosthetics Research Associates, Inc. v. Gore Enter. Holdings, Inc.*,
    787 F.2d 572 (Fed. Cir. 1986) ........................................................26

*Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*,
    649 F.3d 1350 (Fed. Cir. 2011) ...............................................26, 27

*Inwood Labs. v. Ives Labs.*,
    456 U.S. 844 (1982)......................................................................14

*IXPL Holdings v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) ....................................................22

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999) ......................................................4

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
    13cv476, 2013 WL 6046821 (E.D. Va. Oct. 11, 2013)..................29

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
    800 F.3d 1366 (Fed. Cir. 2015) ..............................................*passim*

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.* ("*MEC*"),
    520 F.3d 1367 (Fed. Cir. 2008) ........................................21, 22, 23

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ("*Nautilus II*") ..........................................5

*O.I. Corp. v. Tekmar Co., Inc.*,
    115 F.3d 1576 (Fed. Cir. 1997) ........................................27, 28, 29

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
    161 F.3d 696 (Fed. Cir. 1998) ............................................5, 6, 16

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015)...............................................................14, 15

*Ultimatepointer, L.L.C. v. Nintendo Co., Ltd.*,
    2015-1297, 2016 WL 798354 (Fed. Cir. March 1, 2016) .............23

*V-Formation, Inc. v. Benetton Grp. SpA*,
    401 F.3d 1307 (Fed. Cir. 2005) ....................................................14

- iv -

*Vistan Corp. v. Fadei USA, Inc.*,
    547 F. App'x 986 (Fed. Cir. 2013) .................................................................26

*Wellman, Inc. v. Eastman Chem. Co.*,
    642 F.3d 1355 (Fed. Cir. 2011) .................................................................13

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) ....................................................2, 27, 28, 29

## Statutes

35 U.S.C. § 112 .......................................................................5, 27, 28

35 U.S.C. § 112(b) ........................................................................6, 24

35 U.S.C. § 112(f) ..........................................................................*passim*

## SUMMARY OF ARGUMENT

Applying a novel and erroneous indefiniteness analysis, the District of Delaware concluded that the "processing system" in Sprint's method claims is a "structural limitation," and held this term indefinite. The District Court expressly disregarded the detailed descriptions of the processing system in the intrinsic evidence because, according to the District Court, this evidence provided only "functional descriptions" of what a processing system does. This judgment cannot be sustained under the precedent of this Court. As this Court recently explained in *Nautilus III*, functional descriptions are "highly relevant" to determining structure, reversing a finding of indefiniteness because that district court failed to appreciate what the functional descriptions in the patent would tell a skilled artisan about the structure of the claim terms. Because the "functional descriptions" and other evidence disregarded by the District Court provide clear guidance on the structure of the processing system, the claims are definite.

The District Court was led down the path of error by Cox, which continues to advocate for this novel approach by piecing together three discrete and inapplicable sets of cases. Specifically, Cox draws from:

(1)     Cases prohibiting the use of functional claiming to create ambiguity at the "precise point of novelty" in apparatus claims, which are inapplicable to Sprint's method claims, where the claim steps are the point of novelty;

- 1 -

(2)   Cases dealing with mixed statutory classes, which are inapplicable because Cox admits that this is not such a case; and

(3)   Cases finding that the patentee invoked means-plus-function claiming under 35 U.S.C. 112(f), which are inapplicable because the parties agree that § 112(f) does not apply here.

The District Court's Order, and Cox's entire argument, rest on a premise that finds no legal support, and Cox cannot overcome its burden of establishing indefiniteness by clear and convincing evidence.

Curiously, Cox also argues that Sprint "waived" any argument that Sprint's claims should be analyzed under § 112(f).  But, Sprint does not argue, and has never argued, that § 112(f) should apply to Sprint's method claims.  Because the parties have agreed that § 112(f) does not apply, it is inappropriate for Cox to continue relying on cases applying § 112(f) such as *Williamson* and *Media Rights*. Those cases construe and apply a different statutory provision, and their logic is wholly inapplicable to this case.

Because the evidence establishes that the scope of the claimed "processing system" is defined with reasonable certainty, Sprint respectfully submits that the District of Delaware's judgment of invalidity for indefiniteness should be reversed.

# ARGUMENT

## I. THE DISTRICT COURT DISREGARDED ALL "FUNCTIONAL" EVIDENCE IN CONSIDERING THE SCOPE OF "PROCESSING SYSTEM," WHICH IS ERROR

It is well-established that a function performed by a claim term is often sufficient to show that the claim term is definite. Indeed, this Court has on multiple occasions reversed findings that a claim term is indefinite where there was not proper consideration of whether functional language would inform a skilled artisan of the bounds of the claim term. The District Court erred by categorically concluding that any "physical structures" that are "functionally described . . . do not pass muster under *Nautilus*." (A18-19)

### A. The District Court Erred by Disregarding Functional Limitations, Which Sufficiently Bound the Scope of "Processing System"

The District Court erred by failing to assess whether the scope of "processing system" is reasonably certain due to the functions it must perform in Sprint's claims. This Court definitively established that this analysis is required in *Nautilus III*, where the Court relied on functional descriptions in the claims and specification to overrule a finding that "spaced relationship" was indefinite. There, although the specification did not define "actual parameters" for a "spaced relationship," the functional requirements of the claims and specification showed that the space "cannot be greater than the width of a user's hands," and that functional descriptions in the specification established that "it is not feasible that

- 3 -

the distance . . . be infinitesimally small." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1382-833 (Fed. Cir. 2015) ("*Nautilus III*").

Cox does not attempt to square its position with *Nautilus*, and instead attempts to wave it away by stating that "just because functional disclosure is *relevant* (in that it delimits the scope of the claimed use of a recited structural element) does not make function a *substitute* for structure." (D.I. 34 at 50) (emphasis in original). But Cox ignores that, as in *Nautilus III*, a claim may be definite where functional disclosure delimits the scope of the claimed *structure* of a claim term. That is clearly the case here, where the role of the "processing system" suggests obvious structure (*i.e.*, "receiving" and "transmitting" telecom signaling to other network devices suggests a compatible interface, and "processing signaling" suggests a processor and memory).

Cox also ignores the many other cases cited by Sprint in its opening brief where "the functional language tells us something about the structural requirements." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999); *see also Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1372 (Fed. Cir. 2005) (reversing indefiniteness where the district court failed to recognize that a skilled artisan would discern sufficient structural details from functional descriptions about what that structure must be capable of). Instead, Cox attempts to argue for a novel rule where functional language is *always* indefinite

- 4 -

without specific recitations of physical structure.  This Court's authority forecloses Cox's radical position.

**B.    This Court Has Repeatedly Rejected the District Court's Approach of Drawing an Uncrossable Line Between Structure and Function**

The District Court's insistence on explicitly "structural" descriptions is erroneous under *Personalized Media*, which reversed a finding of indefiniteness of the term "digital detector" in a system claim based on a clear definition in the specification of what that structure *does.  See Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705-06 (Fed. Cir. 1998) (holding that the specification "explicitly defines a 'digital detector' as a device that 'acts to detect the digital signal information' in another stream of information.").  The Court discounted the ALJ's concern that "the specification is otherwise silent concerning the structure of 'digital detector'" as "relevant, if at all, only to the sufficiency of the written description to enable."  *Id.*[1] Because Sprint's patents include an equally clear definition of the function of processing system in its specification, which the District Court erroneously disregarded as "functional," Sprint's claims are definite. (A298, Call Control Specification, '3,561 Patent at 3:53-56 ("The present

---

[1] Though Personalized Media was decided before *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) ("*Nautilus II*"), it applied the correct standard.  *See Personalized Media*, 161 F.3d at 705 ("If the claims read in light of the specification **reasonably apprise** those skilled in the art of the scope of the invention, § 112 demands no more.") (emphasis added).

- 5 -

invention also includes a telecommunications processing system which comprises an interface that is external to the switches and is operational to receive and transmit signaling.") (incorporated into Broadband Specification as explained in Sprint Br. 11 n.3).)

Cox never explains why the *Personalized Media* Court's analysis of indefiniteness under § 112(b) should not be applied here to reverse the District Court. Instead, Cox relies on that Court's analysis of *§ 112(f)*—even though both parties in this case agree that § 112(f) does not apply. Cox Br. 33 (citing to the *Personalized Media* Court's § 112(f) analysis showing that "detector" successfully "convey[ed] to one knowledgeable in the art a variety of structures known as 'detectors'" because of "dictionary definitions" teaching that detectors were "connotative of structure, including a rectifier or demodulator.").

Moreover, even in that irrelevant § 112(f) analysis, the "rectifier" and "demodulator" elements, which were recognized as definite, were also devices named for the functions they perform: "(1): a device for determining the presence of a signal (2): a rectifier of high-frequency current (as a cat whisker and crystal or a vacuum tube) (3): a device for extracting the intelligence from a signal (4) DEMODULATOR 1." *Personalized Media*, 161 F.3d at 705 n.12. Likewise, here, the "processing system" constitutes one of the many well-known devices that receive, process, and transmit telecommunications signaling to set up calls.

- 6 -

Indeed, Sprint's expert explained that a skilled artisan at the time of invention would understand Sprint to be invoking a class of systems with known structure, including the structure disclosed in contemporary patents. (A992)

Finally, to the extent the definition of "detector" discloses any structure, such as a "vacuum tube" as a "rectifier," it is no more detailed than the explicit evidence of structure in Sprint's patents, such as a "Tandem CLX machine," (A303, '3,561 Patent at 13:28-52), and component parts of the disclosed CCP embodiment for a processing system, such as an interface, a translator, a processor, and a memory. (*Id.* at 14:16-27; 14:41-58; Fig. 4)

Likewise, while Cox attempts to rely on excerpted language from *Halliburton*, that case shows that—even where the admitted point of novelty is the *structure* of an object—it is sufficient to show definiteness through function, or structure, or some combination of the two. Like this case, that case involved method claims. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1256 (Fed. Cir. 2008). But in *Halliburton*, instead of reciting novel *steps* for accomplishing a result, those claims merely recited a method for "using a fragile gel drilling fluid comprising [structural elements]." *Id.* at 1246. There, the patentee *admitted* that the point of novelty was the *structural* characteristics of the "fragile gel," *i.e.*, that its claims were "distinguishable from the prior art only because they are 'fragile gels.'" *Id.* at 1253. It was this rare circumstance that led

- 7 -

to discussion of the boundaries of "functional claiming" that Cox now cites out of context.  Cox Br. 26-27.  But even there, this Court ***did not*** conclude that the claim was indefinite due to the use of "functional language."  Rather, the Court rejected plaintiff's construction, finding it would make the claim indefinite "for failing to identify ***the degree*** of the fragility." *Id*. (emphasis added).  Even in that rare circumstance, this Court suggested that the patentee could show definiteness through functional descriptions, concluding that "Halliburton's proposed construction of 'fragile gel'" would be "indefinite because it is ambiguous as to the requisite degree of the fragileness of the gel, ***the ability of the gel to suspend drill cuttings*** (*i.e.*, gel strength), and/or some combination of the two." *Id*. at 1256 (emphasis added). Sprint explained this in its opening brief, Sprint Br. 51-52, but Cox has failed to respond.

Thus, far from creating a ban on functional claiming, as Cox suggests, *Halliburton* establishes that Sprint's claimed "processing system" is definite so long as its scope is reasonably certain from the functions it must perform.  The question of whether "processing systems" passes this test is definitively answered by Cox's own expert, who opined that "processing system" must be a computer that can perform the call processing steps in Sprint's patents.  (A838)  And as far

as the *steps themselves* are concerned, even Cox concedes that they are definite. (A719) ("Thus, we know what it *does*....") (emphasis in original).[2]

This Court's decision in *Hill-Rom* further supports this point, explaining that "[t]here is nothing improper about defining 'datalink' as a link that conveys data." *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1375 (Fed. Cir. 2014). There, this Court reversed a district court's order limiting a "datalink" in a system claim to a cable connected to the bed that carries data," or, a "wired datalink." *Id.* at 1371. This Court instead construed "datalink" to mean "a link that carries data in a wired or wireless fashion," and specifically rejected the dissent's argument that "our construction is incorrect because it defines 'datalink' in functional terms." *Id.* at 1375.

Cox's discussion of *Hill-Rom* misunderstands both the holding of that case and Sprint's position in this case. Cox offers only unsupported attorney argument that "system" is unlike datalink, filter, brake, clamp, screwdriver, or lock, because

---

[2] Cox at times suggests that in Sprint's patent specifications "the device that performs this function is identified as inventive." Cox Br. 5. But Cox never points to any evidence that the patentee identified the structure of a processing system as the sole point of novelty for its method claims. And while the patent specifications sometimes describe the processing system as "external to the switches" (A18-19), Cox has never argued that this description—even if imported into Sprint's method claims—would not be sufficiently clear to a skilled artisan. Moreover, this limitation does not appear in the independent claims asserted in this case, but does appear in various dependent claims in the patents, which, under the doctrine of claim differentiation, establishes that the limitation does not belong in the independent claims. *See, e.g.* A355, claim 4 ("The method of claim 1 . . . wherein the processing system is not on the communication path").

- 9 -

"'system' is merely a placeholder for structure." Cox Br. 34. But Cox fails to address the meaning of a "***processing*** system" in the context of a telephony claim, or to address any of Sprint's evidence for why that term conveys meaning.

Cox also draws the false distinction that "[u]nlike Sprint, moreover, the patentee in *Hill-Rom* did not contend that 'datalink' could be *any* conceivable device that 'links' 'data.'" Cox. Br. 34. This is wrong for two reasons. First, Cox misreads the case, which concludes flat out: "We hold that 'datalink' in the claims at issue is ***any link over which data is transferred*** and can be wired or wireless." *Hill-Rom*, 755 F.3d at 1374 (emphasis added). The Court specifically noted that this includes a "wireless receiver" and also relied on expert testimony that "a person of ordinary skill would understand that 'datalink' does not refer solely to physical connection" and "can be established over wired, wireless, optical, or other connection." *Id*. Second, Sprint does not contend that "processing system" can be any "system" that "processes." Rather, as Sprint explained at the District Court's summary judgment hearing, Sprint has always contended that "processing system," in the context of Sprint's telecommunications claims, refers to a known class of computing devices that process telecommunication signaling to control the setup of

- 10 -

telephone calls. (A1453, A1467)[3] This construction of "processing system" is well-supported by the evidence and is not indefinite.

### C.  The Intrinsic and Extrinsic Evidence, Properly Weighed to Include Limitations in Scope Imposed by the Functions Performed, Clearly Establish Definiteness

The evidence disregarded by the District Court resolves the definiteness issue in Sprint's favor.[4]  There is no dispute that the steps of Sprint's patent claims are clear, and the role of the "processing system" in performing those steps provides bounds on the term with reasonable certainty.  Cox admits that, "we know that the processing system 'functions to physically connect incoming links from other devices'; 'is functional to accept signals … and transfer the signals'; and otherwise 'performs many functions.'"  Cox Br. 45.  The types of signals the processing system must receive and send, along with the signal processing that must occur within the context of a telephony network, imposes clear limits to a skilled artisan on the physical inputs and outputs and processing power of the claimed "processing system."  The requirements of the processing system provides adequate structural limitations.

---

[3]  Cox's assertion that any "call processing system" referenced in the literature is "a different system" than the claimed "processing system" ignores that the term "processing system" must be read in the context of Sprint's telephony claims, a point on which the District of Kansas correctly admonished Cox's expert. (A838)

[4]  For a detailed analysis of the evidence of definiteness in Sprint's claims under prevailing case law, *see* Sprint Br. 23-45.

- 11 -

The patent specifications are replete with descriptions that confirm the scope of the processing system—all of which were disregarded by the District Court as being "functional."  For instance, the Call Control specification states that the processing system "comprises an interface that is external to the switches."  (A298, '3,561 Patent at 3:53-56 (emphasis added))  The Call Control specification also describes a signaling translator, a processor, and associated memory for processing information to select network characteristics.  (A303 and A292, '3,561 Patent at 14:16-20 and FIG. 4) Referring to Figure 4 (*see* A272), the Call Control specification explains how the disclosed structures of the CCP processing system "physically connect" to various telecommunications signaling systems, such as Signal Transfer Points ("STPs"), switches, and Service Control Points ("SCPs"). Finally, the Call Control specification identifies a known call processing system— a Tandem CLX device—as one that would be "familiar to one skilled in the art." (A303, '3,561 Patent at 13:50-52)  The Broadband System specification not only incorporates these descriptions, but includes further evidence of scope of its own, such as specifying that the described components could "reside on a separate SPARC station 20." (A411, '064 Patent at 12:52-56)

As further intrinsic evidence, patents cited on the face of the asserted patents show that "processing system" conveyed meaning, including structure, within the art.  For instance, the '850 Patent predated Sprint's patents by six years, and

- 12 -

referred familiarly to a "[c]all processing subsystem" that "is responsible for the establishment, management, and termination of subscriber calls" based on "requests from subscribers for communication services." (A1042, '850 Patent at 16:30-37). Likewise, the '343 Patent, entitled "<u>Call-processing system</u> and method" (A1073, '343 Patent at Title), discloses a "system and method for processing telephone calls" wherein the "<u>call processing system</u> includes a network control processor for controlling the processing and routing of the calls . . . ." (A1073, '343 Patent at Abstract), and uses the phrase call "processing system" nearly 200 times.

Cox would have this Court believe that each of these patentees independently invented the term "processing system" as an arbitrary, empty vessel they endeavored to fill with meaning. In truth, each of these patentees deliberately drew upon the understood term "processing system" for convenience, disclosing novel modifications to that known term without the need to repeat the structural details already widely known in the art. *See Wellman, Inc. v. Eastman Chem. Co*., 642 F.3d 1355, 1368 (Fed. Cir. 2011) ("This court has repeatedly stated that a patent applicant need not include in the specification that which is already known to and available to a person of ordinary skill in the art").

Accordingly, the intrinsic evidence, if correctly evaluated under this Court's precedent, mandates a conclusion of definiteness, and the District Court's order

should be reversed under *de novo* review. *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015) (explaining that interpretations of intrinsic evidence are "legal conclusions, which this court reviews *de novo*").[5]

If this Court concludes that it is necessary to evaluate extrinsic evidence to determine definiteness, Cox is incorrect that the District Court made any factual findings that are entitled to deference under *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015). The only factual finding made by the District Court, that "there is no 'established meaning in the art' for the disputed limitation," (A19), was the result of several legal errors and is not entitled to deference as Cox suggests. *See Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855 n.15 (1982) ("Of course, if the trial court bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard."). First, the majority of the District Court's review of "extrinsic evidence" actually analyzed the contents of patents that were cited on the face of the patents at issue, and are thus intrinsic evidence. *See V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005). Accordingly, that purported factual finding is heavily premised on conclusions of law reviewed *de novo*. *See Adv. Steel*, 808 F.3d at 1317. Those conclusions are incorrect, and

---

[5] For a detailed description of the intrinsic evidence, *see* Sprint Br. 23-40.

- 14 -

should be overturned.   Second, that finding was premised on legal error, as evidenced by the District Court's belief that functional descriptions are irrelevant to determining definiteness.   Third, *Teva* deference simply does not make sense in the present case, where (1) the District of Delaware reviewed only written documents (dictionaries and declarations) that can be competently reviewed by this Court, and (2) the District of Kansas reviewed the same evidence and reached the opposite conclusion.

But even if the District Court's one factual conclusion were afforded deference under *Teva*, it still must be reversed for "clear error."   Indeed, the extrinsic evidence submitted by Sprint confirms that the functional descriptions ignored by the District Court conveyed sufficient structure.   Specifically, Sprint's technical expert, Dr. Stephen Wicker, explained that "the term 'processing system' was known in the art at the time of the invention and refers to a system that processes signaling to assist in call control."   (A989; *see also* A999-1000)   Dr. Wicker opined that "processing system" was used in Sprint's claims in accordance with that plain meaning, as further evidenced by intrinsic evidence in the patent specifications and patents cited during prosecution history (A967-978; A999-1000), and in extrinsic evidence through additional, contemporary patents. (A999-1000)   Dr. Wicker's testimony was uncontroverted on the meaning of "processing

- 15 -

system" *as used in the claims*, as Cox's expert declaration improperly confused the issue by opining on the meaning of "processing system" in a vacuum. (A838)

Thus, the only correct conclusion on the evidence is that those skilled in the art would understand from the context of the claims that the claimed "processing system" belongs to a known species of structures in the field of telephony. It was therefore further error for the District Court to, *sua sponte*, consult a computer science dictionary for the meaning of "processing system" rather than the more specific field of telephony. (A19) The District Court's one factual finding is not entitled to deference and should in any event be overturned for clear error.

### D.    Cox Urged the District Court to Erroneously Disregard Any Boundaries Imposed on the Scope of "Processing System"

Below, Cox urged the District Court to take the exact approach that led to reversal in cases like *Nautilus III*, *Howmedica*, and *Personalized Media*, and the District Court followed. The District Court adopted Cox's arguments, and thus performed a simple two-step analysis: (1) It concluded that "the asserted method claim contains a structural limitation, 'processing system,'" then (2) It searched for "physical structures" in the specification. (A14-20) The District Court then held that "these physical structures" were only "functionally described by the claims and in the specifications" and thus "do not pass muster under *Nautilus*." (A18-A19) Finding that "the claim language and the specification do not provide

- 16 -

structural limitations for the 'processing system,'" the District Court ruled that "processing system" was indefinite.  (A20)

No doubt realizing the error in the analysis it once urged, Cox now attempts to distance itself from the District Court's order—making only passing reference to that decision.  Cox makes no attempt to explain why the District Court's approach should be upheld given the long line of cases cited by Sprint showing that functional evidence may provide adequate bounds to a claim.  Instead, Cox meekly notes that the District Court did not *expressly* say "that function is 'irrelevant.'" Cox Br. 35.  Of course, the District Court *did* disregard all evidence of structure for being "functionally described in the claims and specifications."  (A18-19)  Further, Cox does not attempt to argue that the District Court followed *Nautilus III* by analyzing what the functional requirements of the processing system suggest about its structure.   Rather, the District Court, having concluded that "processing system" is a "structural limitation," categorically swept aside any "functional" descriptions in the patent saying they "do not pass muster under *Nautilus*." *See id*. This was error.

### E.    The District of Kansas Correctly Applied the Law, and Found Sprint's Claims to Be Definite

The District of Kansas, on the other hand, correctly applied *Nautilus*, as well as the other cases discussed above, to conclude that "processing system" is sufficiently definite in Sprint's method claims.  That court, analyzing the same

indefiniteness arguments on the same evidence, found the "claim is limited by the functions that must be performed by the processing system, and, again, defendants have not cited any authority to suggest that such a claim is inherently indefinite. Indeed, method claims are clearly permissible." (A837)

The District of Kansas also made factual findings, and these findings—in contrast to those of the District of Delaware—are without legal error. Specifically, the District of Kansas evaluated the same expert declarations submitted here to determine if the term "processing system" would have been understood by one skilled in the relevant art. (A838)

The District of Kansas acknowledged that Sprint's expert, Dr. Wicker, opined that "processing system" would have been understood in the telecommunications context to mean "a system that processes signaling to assist in call control," and that Dr. Wicker identified various patents that used the term in this field. (A838) The Kansas defendants' expert conceded that "the phrase must refer to some kind of computer to perform the tasks described in the patent." (A838) In examining ordinary meaning, that court correctly concluded that "defendants' expert has not explained how the particular patent *claims* containing this term are indefinite such that the scope of the claim could not be reasonably determined." (A838) (emphasis in original)

The District of Kansas also noted that while the patents cited by Sprint's expert had different limitations, "those differences do not undermine the basic idea that the term 'processing system,' by itself, would refer to a system of processing signals in specified ways." (A838) The court thus concluded that "'[p]rocessing system' has an ordinary meaning that may easily be understood, and the claims provide notice that such a system may infringe if it performs certain functions as set forth in those claims." (A838-839) "Thus, the public has been given reasonable notice of what has been claimed—and therefore, of what has not been claimed." (A839)

Cox finds fault with this analysis solely on the grounds that its "logic is contrary to this Court's intervening decision in *Media Rights*." Cox Br. 36. But the decision in *Media Rights* applied § 112(f), and is inapplicable to this analysis, where the District of Kansas found that § 112(f) does not apply, and to this one, where the parties agree that § 112(f) does not apply.

## II. BECAUSE THE DISTRICT COURT'S NOVEL APPROACH IS LEGALLY UNTENABLE, COX NOW RETREATS TO INAPPLICABLE LEGAL DOCTRINES

### A. The District Court's Order Does Not Find Support in the "Limit on Functional Claiming" Now Advanced by Cox on Appeal

Cox continues to rely on the application of the supposed "rule against functionally claiming a structural limitation" as legal support for finding Sprint's claims indefinite, but Cox misapplies the cases it cites for that rule. Cox Br. 25-26.

- 19 -

In fact, those cases provide no support for the District Court's Order. It is true that federal courts, in determining definiteness, have cautioned against "describing the ***product*** in terms of function," noting the "vice" that occurs where "the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language ***at the exact point of novelty***." *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 371 (1938) (emphasis added).

Far from establishing a general "rule against functionally claiming a structural limitation," those cases stand for the straightforward notion that "a characteristic essential to novelty may not be distinguished from the old art solely by its tendency to remedy the problems in the art met by the patent." *Id.* at 371-72. In reality, this doctrine applies to a narrow set of cases, which is why this Court's common jurisprudence contains statements like in *Hill-Rom*, where this Court held that "defining a particular claim term by its function is not improper." *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1374-75 (Fed. Cir. 2014).

The narrow doctrine of *Wabash* has no application here, where the steps of Sprint's method claim, and the result achieved through these steps (setting up calls between narrowband and packet networks) are the points of novelty. While Cox touts that this doctrine is "longstanding," Cox has only cited, and Sprint is only aware of, ***one case*** in the history of patent jurisprudence that even discusses the doctrine when evaluating a method claim. That case was *Halliburton*, involving

- 20 -

the rare circumstances where the patentee admitted in prosecution history that the sole point of novelty for its method claim was the structural characteristics of the recited "fragile gel."  *Halliburton*, 514 F.3d 1252.  Here, in contrast, Sprint has never said that the structural characteristics of the processing system are the point of novelty of Sprint's method claims.  Rather, the steps of the method are the point of novelty.  Accordingly, *Wabash* is inapplicable.

**B.    The Sole Case Relied on by the District Court for Its Approach Is *Microprocessor Enhancement*, Which Fails to Support the Present Indefiniteness Judgment**

The District Court relied on language excerpted from *Microprocessor Enhancement* as its sole basis for concluding that the "processing system" in Sprint's method claims is a "structural limitation" such that all "functional descriptions" are irrelevant in determining definiteness.  But the District Court's approach draws no support from that case.  Before the District Court, and continuing here on appeal, Cox pieces together language from *Microprocessor Enhancement* and *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 1994) to suggest that any recitation of "physical structures" in a method claim must have "sufficient structure" to be considered definite.  *See* Cox Br. 25, 36, 49-50. Again, Cox asks this Court to apply a narrow doctrine too broadly.

As the District of Kansas properly concluded, *Microprocessor Enhancement* deals with the inapplicable case of mixed statutory claims, first considered by this

- 21 -

Court in *IXPL Holdings v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005), where it is unclear whether a party infringes the claim by creating an apparatus with the claimed structure, or by performing the recited user steps.  For instance, the claim at issue in *Microprocessor Enhancement* explicitly recited twenty-four lines of structural characteristics for a "pipeline processor" before ever reciting any steps that must occur.  *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.* ("*MEC*"), 520 F.3d 1367, 1370-71 (Fed. Cir. 2008).

This doctrine for mixed-statutory classes, too, simply has no application to Sprint's method claims asserted here.  Cox even *admitted* that Sprint's claims do not mix statutory classes.  *Compare* (A1421) (describing *MEC* as "an IPXL-type case where there was a concern about claiming both structural and functional limits"), *with* (A1435) ("We're not suggesting this is an IPXL case.  These are method claims").  And nothing in *MEC* or *In re Katz*, or any other case, suggests that the principles in these cases apply outside the rare case of mixed statutory classes.

In fact, the District Court here erred in a way that is similar to the error by the district court in *MEC*.  That court erroneously concluded that the claim recited the performance of method steps, and thus found the claims indefinite for mixing statutory classes.  This Court reversed, explaining that the claims did not recite steps to be performed by a user, and that "pipeline processor" is definite because

- 22 -

the claim was "clearly limited to a . . . processor possessing the recited structure and *capable* of performing the recited functions." *MEC*, 520 F.3d at 1375 (emphasis in original); *see also Ultimatepointer, L.L.C. v. Nintendo Co., Ltd.*, 2015-1297, 2016 WL 798354, at *8 (Fed. Cir. March 1, 2016) (discussing *MEC*).

Thus, here the District Court committed two errors in concluding that "[a]s in *Microprocessor Enhancement*, the asserted method claim contains a structural limitation, 'processing system,'" (A17) which is only "functionally described" in the patent, and thus "do[es] not pass muster under *Nautilus*." (A18-19)  First, the claim in *MEC* was *definite* because it was *not* a method claim and recited capabilities for an apparatus, not method steps.  Second, the District Court ignored that in *MEC* the "pipeline processor" was *definite* because the claims made clear what it must be *capable of*.  The District Court's refusal examine what Sprint's "processing system" was capable of in assessing definiteness errs under the very precedent that the District Court relied on for its analysis.

It is therefore unsurprising that Cox fails to refute (or even acknowledge) Sprint's explanation that the *MEC* Court actually reversed indefiniteness, and that in doing so, "[i]mportantly, this Court did not then search the intrinsic evidence for 'physical structures' that correspond to the pipelined processor, nor did it suggest that any 'functional language' should be disregarded in determining the bounds of this claim term."  Sprint Br. 54.

- 23 -

### C.    The District Court's Order Does not Find Support in § 112(f) "Means-Plus-Function" Claiming

Cox also resorts to inapplicable § 112(f) case law in attempting to justify the District Court's approach.  But the parties have agreed that § 112(f) does not apply, and the District Court relied on that agreement.  (A20 n.9)  On appeal, Cox does not argue that § 112(f) now applies, other than in an offhand sentence suggesting—without further explanation—that the District Court's "analysis was proper under § 112(b), and  equally supports affirmance under § 112(f)." Cox Br. 51.  And Cox is incorrect that *Sprint* is now asking for § 112(f) treatment: Sprint has always argued that § 112(f) does not apply.  Thus, every § 112(f) case cited by Cox (and they are the majority of Cox's citations) is simply inapplicable to the analysis before this Court and should be disregarded.

Because the parties agree that § 112(f) does not apply, it would be wholly improper to rely on statements made by this Court during a § 112(f) analysis, like the many, many such statements put forth by Cox on appeal, to affirm the District Court's judgment of indefiniteness.  Indeed, § 112(f) is a discrete analysis for a different statutory provision, which is why this Court routinely reverses district courts applying that analysis where the prerequisites for applying § 112(f) do not exist. *See*, *e.g., Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1365 (Fed. Cir. 2000).  It is thus unsurprising that nothing in the § 112(f) cases cited by

Cox suggests that the analysis in those case can correctly be applied to any other case absent a finding that § 112(f) applies.

Cox nonetheless relies heavily on *Media Rights*, arguing that case is "indistinguishable" from the present, and that under *Media Rights*, "this is an open and shut case." Cox Br. 20.  Of course, *Media Rights* was decided under application of § 112(f), which Cox agrees does not apply.  But even if *Media Rights* were somehow held to apply, this case is easily distinguishable.  The patentee in *Media Rights* did not dispute that "compliance mechanism" had "no commonly understood meaning and is not generally viewed by one skilled in the art to connote a particular structure."  *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015).  And in *Media Rights*, the Court found that the claims and specification did not "suggest[] anything about the structure of the mechanism itself."  *Media Rights*, 800 F.3d at 1369.

In contrast, here, Sprint's expert explained that, unlike in *Media Rights*, those of ordinary skill in the art would understand "processing system" to refer to a known class of devices, citing substantial intrinsic and extrinsic evidence supporting the definiteness of "processing system." (A989; *see also* A999-1000) Further, here the specifications do not merely connote, but *expressly state* structure for the "processing system" of the claims, as in a Tandem CLX or SPARC station 20 device. (A303; A411)  The evidence of definiteness here is even stronger than

- 25 -

the evidence in *Inventio*, which the *Media Rights* court distinguished in finding

indefiniteness.  In *Inventio*, the Federal Circuit held that the "modernizing device"

of the claims, though "not a commonly understood term—was used to describe an

electrical circuit, which we found ***connotes sufficient structure when coupled with***

***a detailed description of the circuit's operation***." *Media Rights*, 800 F.3d at 1369.

(emphasis added).  *Media Rights* is easily distinguishable on its facts, and § 112(f)

provides no more support to the District Court's approach than the other two

narrow, inapplicable doctrines now set forth by Cox.

### III.  THE DISTRICT COURT'S ANALYSIS CANNOT BE AFFIRMED ON ALTERNATIVE 112(F) GROUNDS, WHICH WOULD REQUIRE THRESHOLD FACTUAL DETERMINATIONS NOT IN THE RECORD

In its brief, Cox now suggests in a single sentence that the District Court's

judgment may be affirmed on alternative § 112(f) grounds.  Cox Br. 51.  Cox is

incorrect.  "Affirmance on an alternative ground is appropriate only when such

affirmance does not depend on fact-finding." *Intl. Med. Prosthetics Research*

*Associates, Inc. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 573 n.2 (Fed. Cir.

1986); *see also Vistan Corp. v. Fadei USA, Inc.*, 547 F. App'x 986, 991-92 (Fed.

Cir. 2013) ("As we have explained, this court 'will not undertake the indefiniteness

and enablement inquiries in the first instance.'") (quoting *Green Edge Enters., LLC*

*v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010)).  Because this

Court is not able to determine whether § 112(f) applies—or whether Sprint's

- 26 -

claims are indefinite under that statute—without additional fact-finding, § 112(f) does not provide appropriate alternative grounds for affirming the District Court. *See*, *e.g.*, *EnOcean GmbH v. Face Int'l Corp.*, 742 F.3d 955, 960 (Fed. Cir. 2014) (citing *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011), as "calling for courts to consider relevant extrinsic evidence to determine whether a claim term invokes § 112, ¶ 6").

The current record does not contain sufficient determinations of fact for this Court to affirm on § 112(f) grounds. Before the District Court, both parties agreed that § 112(f) did not apply to Sprint's claims, and the District Court likewise did not address § 112(f) considerations. (A20 n.9) Because Sprint's claims do not contain "means for" or "steps for" language, there is a presumption against the application of § 112(f) that can only be overcome by an "evidentiary showing" by Cox "that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).

Further, affirming the District Court on § 112(f) grounds would flatly contradict *O.I. Corp.* and its progeny, which, as a matter of statutory interpretation, have long refused to apply means-plus-function treatment to method claims simply because they use functional language. In *O.I. Corp*, this Court explained that "Section 112, ¶ 6, as is well-documented, was intended to permit use of means

- 27 -

expressions without recitation of all the possible means that might be used in a claimed *apparatus*." *See, e.g., O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997). Accordingly, the Court noted that even if the apparatus claims in the asserted patent could properly be treated as means-plus-function claims, the Court would still reject applying § 112(f) to parallel method claims in the patent, explaining that "the method claim is not drafted in step-plus-function form and is thus not subject to this provision." *Id.* at 1584.

The same point follows from *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356 (Fed. Cir. 2001). There, the district court applied § 112(f) to method claims, noting that it would "undermine the compromise struck by § 112, paragraph 6, if a patentee could avoid the strictures of that section by simply embedding a purely functional description of a patented device in a method claim." *Id.* at 1368. This Court reversed, explaining that the "district court's decision and reasoning directly contradict this court's previous holdings regarding the applicability of § 112, paragraph 6, to method claims." *Id.*

While Sprint explained the operation of the *O.I. Corp.* cases at length in its opening brief to the District Court (A937-39), Cox has never pointed to a decision of the Supreme Court or of the Federal Circuit, *en banc*, that undermines these cases. And while Cox frequently cites to this Court's *en banc* decision in *Williamson*, both *O.I. Corp.* and *Generation II Orthotics* were decided before this

- 28 -

Court's 2004 decision in *Lightning World*, and thus were wholly unaffected by *Williamson*. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (*en banc*) ("Henceforth, we will apply the presumption as we have done prior to *Lighting World*"). [6]

There is no legal basis to apply § 112(f) to Sprint's method claims.  And because that provision was never argued before, or decided by, the District Court, there is an insufficient factual basis for applying that provision to affirm on alternative grounds.

## CONCLUSION

Because the intrinsic and extrinsic evidence show that the scope of the claimed "processing system" is defined with reasonable certainty, Sprint respectfully submits that the District of Delaware's judgment of invalidity for indefiniteness should be reversed.

---

[6] While this Court, in *Media Rights*, recently applied means-plus-function treatment to a method claim, that case should be limited to its facts, where the defendant asked the district court to apply means-plus-function treatment to two terms as they appeared in all of the claims at issue, and the patentee never cited to *O.I. Corp.*, or otherwise argued that it would be improper to extend means-plus-function treatment beyond the system claims to the asserted method claims. *See* Capital One's Responsive Claim Construction Brief, Dkt. No. 58, *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 13cv476, 2013 WL 6046821 (E.D. Va. Oct. 11, 2013).  Further, nothing in *Media Rights* purported to overrule the *O.I. Corp.* cases, and even if it did this Court "would be bound to ignore it." *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2014).

Dated:  March 11, 2016                         Respectfully Submitted,

  /s/  B. Trent Webb
  B. Trent Webb                                Robert Reckers
  Peter E. Strand                              **SHOOK, HARDY & BACON L.L.P.**
  John D. Garretson                            600 Travis St., Suite 3400
  Ryan D. Dykal                                Houston, TX 77002
  Aaron E. Hankel                              Phone:   (713) 227-8008
  **SHOOK, HARDY & BACON L.L.P.**              Fax:      (713) 227-9508
  2555 Grand Boulevard
  Kansas City, MO 64108-2613
  Phone:    (816) 474-6550
  Fax:       (816) 421-5547


  J. Michael Jakes
  **FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP**
  901 New York Avenue, NW
  Washington, DC 2000
  Phone: (202) 408-4000

**CERTIFICATE OF COMPLIANCE**
**With Type-Volume Limitation, Typeface Requirements,**
**and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

        this brief contains <u>6,945</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

Dated: March 11, 2016                  <u>/s/ B. Trent Webb          </u>
                                         B. Trent Webb

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 11th day of March 2016, I electronically filed this Corrected Reply Brief with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES
P.O. Box 1460
Richmond, VA  23218